

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Steven L. Laskey | ) |
| | ) Case No. 10-3067 |
| Debtor(s) | ) |
| | ) (Related Case: 09-37458) |
| PNC Bank, N.A. | ) |
| successor by merger to National City Bank | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| Steven L. Laskey | ) |
| | ) |
| Defendant(s) | ) |

## DECISION AND ORDER

This cause comes before the Court on the Parties' Cross Motions for Summary Judgment. These Motions are brought on the Complaint filed by the Plaintiff, PNC Bank, to Determine the Dischargeability of a particular debt owed to them by the Defendant/Debtor, Steven L. Laskey. (Doc. No. 1). Regarding their respective positions on the matter, both of the Parties filed supporting written arguments and documentation. The Court has now had the opportunity to review the evidence and arguments submitted by the Parties, as well as the entire record in this case. Based upon this review, the Court finds, for the reasons set forth in this Decision, that each of the Parties' Motions for Summary Judgment should be Denied.

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

## FACTS

In 1996, the Defendant/Debtor, Steven L. Laskey (hereinafter the "Debtor"), together with another individual, started a business venture. The Debtor and his partner incorporated the business which operated under the name of Concorde Construction of Northwest Ohio, Inc. As the principals of the business, the Debtor was named president; the Debtor's partner was named vice-president.

In 1999, the Debtor and his partner obtained a business line of credit from National City Bank. In obtaining the line of credit, the Debtor and his partner executed an agreement, providing that its use would be limited to "business and commercial purposes." Also, in their personal capacities, the Debtor and his partner provided guarantees for the extension of credit. The Plaintiff, PNC Bank is the successor by merger to this agreement.

In 2003, the Debtor and his partner agreed to wind down and dissolve their business, Concorde Construction. The Debtor and his partner also agreed to close their business line of credit with National City Bank which at this juncture did not reflect an outstanding balance. Notwithstanding, in the time period following the cessation of business operations, the Debtor utilized his business line of credit with National City Bank for his own personal use. These subsequent advances taken by the Debtor were never fully repaid.

On January 13, 2009, the Plaintiff obtained a judgment against the Debtor for the sum of $14,126.34, which represented the balance due and owing on the line of credit. In the same year, on October 26, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff then commenced this action, seeking a determination that its judgment against the Debtor was a nondischargable debt pursuant to 11 U.S.C. § 523(a)(2)(A).

Page 2

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

## DISCUSSION

In this adversary proceeding, the Plaintiff seeks to have its claim against the Debtor held to be a nondischargeable debt. A proceeding such as this, brought to determine the dischargeability of a particular debt, is deemed by bankruptcy law to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1); § 1334.

A debtor's honesty has long been a prerequisite to the discharge of what are otherwise legally enforceable obligations. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). To this end, bankruptcy law has long excepted from discharge those debts which are shown to have arisen from dishonest or otherwise wrongful acts committed by a debtor. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). This policy is partially codified in § 523(a)(2)(A), the provision relied upon by the Plaintiff for its complaint to determine dischargeability, which excepts from discharge a debt arising from a false pretense, a false representation, or actual fraud.

On the Plaintiff's complaint to determine dischargeability, each of the Parties has filed a Motion for Summary Judgment. The standard for summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056. It provides for in relevant part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586-588, 106 S.Ct. 1348, 1348, 1356, 89 L.Ed.2d 538 (1986). Furthermore, in situations such as this, where the Parties have filed Cross Motions for Summary Judgment, the Court must consider

Page 3

each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *Colonial Pacific Leasing v. Mayerson (In re Mayerson)*, 254 B.R. 407, 411 (Bankr. N.D.Ohio 2000).

In order to sustain a cause of action under § 523(a)(2)(A), a creditor must show, among other things, that the debtor intended to deceive the creditor. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard, meaning that the debtor's personal characteristics and circumstances must be considered. *Id.* at 281. This facet normally makes adjudication of an action brought under § 523(a)(2)(A) inappropriate on a motion for summary judgment.

The purpose of a summary judgment motion is to avoid the need for a trial, and its attendant costs, where there exists no genuine issues of material fact in dispute. *Smith Wholesale Co., Inc., et al. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854 (6th Cir. 2007). Summary judgment should, therefore, never be used merely to cut short a trial where factual issues should be explored. *Drexel Heritage Furnishings, Inc. v. U.S.*, 4 Cl.Ct. 162, 168 (Cl.Ct.1983). A trial, however, is usually necessary to adjudicate issues involving an individual's state of mind. The reason: Determinations concerning a debtor's state of mind require a subjective assessment of the debtor's intent which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify at trial during both direct and cross examination.

Notwithstanding, summary judgment may be appropriate when determining issues of a debtor's subjective intent to defraud under § 523(a)(2)(A) where the record of the case leaves no plausible honest explanation for the debtor's action. *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr. N.D.Ohio 1998); *In re Mayerson*, 254 B.R. at 412. *See also*

Page 4

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

*Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir. 1994) ("circumstantial evidence may be sufficiently potent to establish fraudulent intent beyond hope of contradiction."). This is the position of both of the Parties who maintain that the advances taken by the Debtor on the line of credit he and his former business partner maintained with National City Bank can only be explained in terms of an intent, or from the Debtor's perspective a lack of intent, to commit fraud.

In an action brought to have a debt held nondischargeable under § 523(a)(2)(A), the plaintiff bears the burden of proof to establish, by at least a preponderance of the evidence, the applicability of the exception to dischargeability. *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 853 (6th Cir.1993). For its burden, that the Debtor's intent to commit fraud is unequivocally established by the record of this case, the Plaintiff relies on an affidavit submitted by the Debtor wherein the Debtor acknowledged two points.

First, in his affidavit, the Debtor acknowledged that, prior to taking personal advances on the business line of credit with National City Bank, he believed that the account had been closed. The Plaintiff further points to the Debtor's knowledge that, in using the business line of credit for his personal use, "he was using the credit line for purposes other than that which it was intended." (Doc. No. 9). According to the Plaintiff, the Debtor's fraud can be inferred from these points because the "fact that the Defendant chose to utilize the credit line after it had been paid off and at a time when he believed the business had shut down suggests more than mere negligence and rise to a level of recklessness sufficient to satisfy the requisite intent necessary under 11 U.S.C. § 523(a)(2)(A)." *Id*.

The points put forth by the Plaintiff raise serious concerns for the Court as to the Debtor's honesty in his dealings with the National City Bank. Conspicuously, an intent to defraud may be indicated when, as occurred here, a debtor uses funds for a purpose other than what was intended under the terms of the parties' contract. *See, e.g., Stifter v. Orsine (In re Orsine)*, 254 B.R. 184, 189 (Bankr. N.D.Ohio 2000) (an inference of an intent to defraud arose where a contractor did not place

Page 5

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

an order for windows he had agreed to install). Moreover, this indicator of fraud is, to say the least, not placated when it is considered that the Debtor used the business line of credit with National City Bank despite his belief, albeit mistaken, that the account had been closed.

For these reasons, a degree of fraudulent intent can be inferred from the Debtor's actions. This inference, alone, necessarily precludes the Court from entering summary judgment in favor of the Debtor. At the same time, utilizing funds for a purpose outside the terms of a contract is not *per se* fraudulent. *Mannheim Automotive Financial Services, Inc. v. Park (In re Park)*, 314 B.R. 378, 383 (Bankr. N.D.Ill. 2004) ("selling cars out of trust is not inherently fraudulent."). In this regard, it is well-established that the breach of a contractual promise does not, alone, equate with a nondischargeable debt for purposes of § 523(a)(2)(A). *EDM Machine Sales v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D.Ohio 2003).

Instead, when assessing fraudulent intent under § 523(a)(2)(A), the Sixth Circuit Court of Appeals has instructed that what "courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). Similarly, when assessing whether a debtor possessed the intent to defraud, if room exists for a court to infer honest intent, the issue of dischargeability must be decided in favor of the debtor. *Rembert v. Citibank South Dakota, N.A.*, 219 B.R. 763, 767 (E.D.Mich.1996), *aff'd*, 141 F.3d 277 (6th Cir.1998), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). Accordingly, even in situations such as this, where strong inferences of fraud exist, a court should not grant a motion for summary judgment on an action brought under § 523(a)(2)(A) when plausible evidence exists which would tend to negate the inference of fraud. *Colonial Pacific Leasing v. Mayerson (In re Mayerson)*, 254 B.R. 407, 412 (Bankr. N.D.Ohio 2000).

Page 6

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

As evidence of his lack of intent to defraud, the Debtor made the following statement to the Court:

> Plaintiff has presented no account history with regard to this line of credit. However, based upon the statements contained in Plaintiff's brief and those contained in Defendant's Affidavit, it appears that advances on the line resumed some time in the year 2003. Further, according to the Lucas County Court of Common Pleas docket, Plaintiff filed its Complaint against Defendant on July 15, 2008. Thus, a period of approximately five years elapsed before suit was filed. Further, Defendant did not file his Chapter 7 petition until October, 2009.

(Doc. No. 12, at pg. 5). With no evidence to directly contradict this statement, it would appear that an approximately six-year time interval exists between when, in 2003, the Debtor improperly utilized his line of credit with National City Bank, and October of 2009, when the Debtor sought bankruptcy relief. This Court finds this large time interval to be potentially exculpatory evidence, precluding the entry of summary judgment for the Plaintiff.

Debtors who intend to defraud a creditor by filing for bankruptcy relief usually do not wait more than a half of a decade to carry out their scheme. Rather, the opposite tends to be true, with this Court recently observing, that "a short time interval between when a debt is incurred and when a debtor files for bankruptcy relief is a strong, and possibly dispositive indicator of an intent to defraud. Furthermore, the shorter the time period between these two events, the stronger the indicator of fraud . . . ." *Fifth Third Bank v. Alexo (In re Alexo)*, Case No. 10-3066, Slip Copy, 2010 WL 3187476 *5 (Bankr. N.D.Ohio 2010), citing *Rust v. Tellam (In re Tellam)*, 323 B.R. 661, 665 (Bankr. N.D.Ohio 2005).

In sum, given the proximity of events in this case, some matters regarding the relationship between the Parties could be explored further. For example, what was the financial condition of the Debtor at the time he took the advances on the line of credit? Also, did the Debtor make any attempt

Page 7

PNC Bank, N.A. v. Steven L. Laskey
Case No. 10-3067

to repay the debt, and if he did not, then why didn't he do so? It would also be interesting to know why the Debtor, despite thinking the account with National City Bank was closed, still thought it proper to use the account. Such matters, however, can only be fully explored at Trial.

Consequently, for all those reasons stated, the Court finds that genuine issues of fact remain in this case, and thus the Court is not persuaded that either Party is entitled to summary judgment on the Plaintiff's complaint to determine dischargeability under 11 U.S.C. § 523(a)(2)(A). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Plaintiff's Motion for Summary Judgment, be, and is hereby, DENIED.

***IT IS FURTHER ORDERED*** that the Defendant's Motion for Summary Judgment, be, and is hereby, DENIED.

***IT IS FURTHER ORDERED*** that a continued PreTrial is hereby set for Wednesday, October 13, 2010, at 2:30 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

Dated: September 17, 2010

Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 17th day of September, 2010 to:


Scott D. Fink
323 W. Lakeside Ave, #200
Cleveland, OH 44113

Steven L. Laskey
3325 Strayer Road
Maumee, OH 43537

Steven B Winters
300 Madison Ave, #1100
Toledo, OH 43604-2605

                                              /s/Diana Hernandez
                                        Deputy Clerk, U.S. Bankruptcy Court